# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
ROANOKE, VA
FILED

NOV 2 1 2024

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 5:13-cr-00019 |
| v. | ) | LAURA A. AUSTIN, CLERK |
| | ) | DEPUTY CLERK |
| | ) | By: Michael F. Urbanski |
| BOBBY CLYDE STEWART, JR., | ) | Senior United States District Judge |
| Defendant-Petitioner | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Bobby Clyde Stewart Jr.'s motions for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). On August 17, 2023, Stewart filed a pro se motion, and on October 10, 2023, the Federal Public Defender filed a supplemental motion on his behalf. ECF Nos. 517, 524. The government filed a response on December 13, 2023, to which Stewart replied on January 31, 2024. ECF Nos. 530, 533. As set forth below, the court will **GRANT** Stewart's motions and **REDUCE** his sentence from 180 months to 130 months, but not less than time served.

### I. Background

On August 1, 2013, Stewart and seven codefendants were charged with twenty-three counts related to distributing drugs. Stewart was charged with one count of conspiring to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, or "crack," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); and three counts of distributing a mixture and substance containing a detectable amount of crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Counts Eighteen, Nineteen, and Twenty-One). Indictment, ECF No. 30. On December 11, 2013,

Stewart entered into an agreement in which he agreed to plead guilty to Count One of the indictment. Plea Agreement, ECF No. 172.

The statutory minimum term of imprisonment on Count One was 10 years. Presentence Investigation Report (PSR), ECF No. 321 ¶ 62; 21 U.S.C. § 841(b)(1)(A). Stewart was held responsible for the distribution of 637.7 grams of crack cocaine, which fell within the stipulated drug weight range in the plea agreement of at least 280 grams but less than 840 grams of crack. PSR, ECF No. 321 ¶ 20; United States Sentencing Guidelines (USSG or guidelines) § 2D1.1(c)(4) (2012). That drug weight gave Stewart a base offense level of 32, decreased by 3 points for acceptance of responsibility, for a total offense level of 29. PSR, ECF No. 321 ¶¶ 25–34. He had 13 criminal history points, resulting in a criminal history category of VI. Id. ¶ 43. His offense level combined with his criminal history category gave him a guidelines range of 151 to 188 months. USSG Ch. 5 Pt. A.

However, Stewart was classified as a career offender, which increased his base offense level to 37 and gave him a total offense level of 34. Id. ¶¶ 31–34. With his criminal history category of VI, his guidelines range was 262 to 327 months. PSR, ECF No. 321 ¶ 63. In the government's sentencing memorandum, it noted that the United States Sentencing Commission (the Commission) had sent to Congress a proposed amendment to the Drug Quantity Table found at USSG § 2D1.1 that would lower by two levels the base offense levels associated with various drug quantities, including crack cocaine. Although the government maintained that Stewart should be sentenced as a career offender, it also stated that it was not opposed to a downward variance consistent with the proposed amendment if Stewart agreed to not seek a further reduction once the proposed amendment went into effect. Gov't Sent.

Mem., ECF No. 296 at 5. In other words, the government proposed a downward variance from the career offender guideline offense level of 37, based on the changes to the drug quantity table. Such a downward variance resulted in an offense level of 32 and a guidelines range of 210 to 262 months. Id. at 5–6. The government recommended a sentence of between 210 and 234 months. Id. at 6.

In Stewart's sentencing memorandum, he argued that the career offender designation substantially overrepresented the seriousness of his criminal history and warranted a departure under USSG § 4A1.3(b)(1) (2012). Def.'s Sent. Mem., ECF No. 302 at 5. He then argued that his prior offenses were more than 15 years old and would not ordinarily have counted against him, but for the fact that his probation was revoked in within the 15-year timeframe based on a technical violation of failing to report to his probation officer. Id. at 5–6; USSG § 4A1.2(e)(1). He stated that at sentencing he would ask the court to discount the prior convictions based on the foregoing and find that the appropriate criminal history category was IV. Def.'s Sent. Mem., ECF No. 302 at 6. He further argued that the career-offender guideline over-represented his role in the offense. Id. He advised the court that at sentencing he would propose that the court use the drug quantity stipulated by the government, reduced by two levels based on the anticipated amendment to the drug quantity table, to give him a base offense level of 30. Id. at 6–7. That would result in a total offense level of 27 and a criminal history category of IV, rendering a guidelines range of 100 to 125 months. Id. at 6–8; USSG Ch. 5 Pt. A.

On August 29, 2014, the court sentenced Stewart to a term of 180 months to be followed by a 5-year term of supervised release. J., ECF No. 311. The court adopted the PSR

without change but varied downward, based partly on the pending changes to the proposed amendments to the sentencing guidelines and Stewart's agreement to not request a further reduction. Statement of Reasons, ECF No. 312 at 3. The court's statement that it adopted the PSR without change, and its calculation of Stewart's sentencing range as being 262 to 327 months, confirms that Stewart was sentenced as a career offender under the guidelines, notwithstanding the government's recommendation that his sentence be reduced based on upcoming changes to the drug weight tables. In addition to anticipating the guidelines amendment regarding drug quantities, the court's decision to vary downward to 180 months presumably also was based on Stewart's argument that the career offender designation over-represented either his criminal history or his role in the offense.[1] Stewart is incarcerated at Federal Correctional Institution Coleman Medium and has a projected release date of May 13, 2026.[2]

Stewart seeks compassionate release on the following bases: (1) If sentenced today he no longer would be considered a career offender and he would face a much shorter sentencing guidelines range, and the difference in the sentence he received in 2014 and the sentence he would receive today is a gross disparity warranting compassionate release; (2) he has a chronic medical condition that puts him at a particularized risk of contracting a deadly virus should he be exposed to one; (3) staffing shortages at the Bureau of Prisons which result in every-other-day lockdowns impede him from getting proper medical care, participating in rehabilitative programming, and having contact with his family; and (4) he has made great strides toward

---

[1] Unfortunately, no transcript of this hearing was produced, and a recording is no longer available.
[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Bobby Clyde Stewart") (last viewed Oct. 29, 2024).

rehabilitation. Mots., ECF Nos. 517, 524. The government responds that (1) the Commission exceeded its authority when it promulgated USSG § 1B1.13; (2) even if the Commission did not exceed its authority, Stewart cannot establish that the sentence he received is unusually long or grossly disparate to the sentence he might receive today; and (3) the 18 U.S.C. § 3553(a) factors weigh against granting compassionate release to Stewart.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(emphasis added).

Accordingly, Stewart's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is

appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. The government does not contest that Stewart exhausted his administrative remedies.

Regarding whether Stewart has established an extraordinary and compelling need for a sentence reduction, prior to enactment of the First Step Act of 2018, only the Bureau of Prisons could file a motion for compassionate release on behalf of an inmate. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act, among other changes, amended § 3582(c)(1)(A) to allow inmates to file motions with a district court on their own behalf after exhausting their administrative remedies.

The statute also requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the Commission. But, prior to March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. See discussion, United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020).[3] In the absence of applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason warranting a sentence reduction. United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted today. could be an extraordinary and compelling reason warranting a sentence reduction. See McCoy, 981 F.3d at 286, and the cases that followed it.

---

[3] See also U.S. Sentencing Comm'n Annual Report 2–3 (2019)
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

In May 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions were policy statements addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023). As is relevant to Stewart's motion, the revisions include a policy statement that addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A). The policy statement provides that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§ 1B1.13(b)(6) and (c).

Stewart is serving a sentence of 180 months, a downward variance from the 262-to-327-months guidelines sentence, which was based on his designation as a career offender under the guidelines. He argues that the law has changed with respect to the career offender designation, and without it, his guidelines range would be 151 to 188 months and following revision to the drug weight table in November 2014, his guidelines range would be 130 to 162 months. Stewart argues that the difference between the sentence he currently is serving and the sentence he likely would receive today is a gross disparity that warrants compassionate release. Stewart has served more than 10 years of his term of imprisonment and thus meets the first criteria for a reduction.

### A. Sentencing Commission's Authority to Promulgate USSG § 1B1.13(b)(6) and (c).

The government first argues that the Commission exceeded its authority when it promulgated USSG §§ 1B1.13(b)(6) and (c). In light of the argument, a short review of the purpose and functions of the Commission is in order.

The Commission was established in 1984 as an independent commission in the judicial branch of the United States, with the purpose of establishing sentencing policies and practices of the federal criminal justice system that (1) assure the meeting of the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2); (2) provide certainty and fairness in meeting the purposes of sentencing and avoiding unwarranted sentencing disparities while maintaining sufficient flexibility to permit individualized sentences; (3) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and (4) develop means of assessing the degree to which sentencing, penal, and correctional practices are

8

effective in meeting the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).[4] 28 U.S.C. § 991.

Among other duties, the Commission, by a vote of four of its seven members, pursuant to its rules and regulations and consistent with all relevant federal statutes, shall promulgate guidelines for use by a sentencing court in determining a sentence to be imposed. 28 U.S.C. § 994(a)(1). The Commission also is tasked with promulgating general policy statements regarding application of the guidelines, or other aspects of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in 18 U.S.C. § 3553(a)(2), including the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c). 28 U.S.C. § 994(a)(2).

The Commission further is directed to review and revise the guidelines and submit proposed guidelines amendments to Congress for review:

> The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective

---

[4] Section 3553(a) sets out the factors a court considers in imposing a sentence, including
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

> date is revised or the amendment is otherwise modified or
> disapproved by Act of Congress.

28 U.S.C. § 994(p). Notably, policy statements like the one at issue here are not subject to the

180-day waiting period applicable when the Commission passes a Guidelines Amendment.

United States v. Colon, 707 F.3d 1255, 1260–61 (11th Cir. 2013); United States v. Horn, 679

F.3d 397, 406 (6th Cir. 2012). However, "to the extent practicable, the Commission shall

endeavor to include amendments to policy statements and commentary in any submission of

guideline amendments to Congress and put them into effect on the same November 1 date as

any guideline amendments issued in the same year." U.S. Sentencing Comm'n, Rules of

Practice and Proc. 4.1.

When revising the guidelines, the Commission is directed to consider comments and

data coming to its attention and to consult with authorities and representatives of various

entities of the criminal justice system. The United States Probation System, the Bureau of

Prisons, the Judicial Conference of the United States, the Criminal Division of the United

States Department of Justice, and a representative of the Federal Public Defenders are to

submit observations, comments, or questions pertinent to the work of the Commission and

shall submit at least annually, a report commenting on the guidelines and suggesting changes

that appear warranted. 28 U.S.C. § 994(o).

Finally, as is relevant to this case, Congress directed that the Commission, in

promulgating general policy statements regarding the sentence modification provisions in 18

U.S.C. § 3582(c)(1)(A), "shall describe what should be considered extraordinary and

compelling reasons for sentence reduction, including the criteria to be applied and a list of

specific examples." The only qualification to this directive is that "[r]ehabilitation of the

defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 944(t). Against this backdrop, the Commission promulgated USSG §§ 1B1.13(b)(6) and (c), set forth above.

In reviewing the revised policy statement and considering the requirements of the statute, it appears that the Commission fulfilled the statutory prerequisites. As explained by the Chair of the Commission, the change to the policy statement (and the other changes made by the Commission) were made after input from individuals and communities across the country, including Congress, the chambers of federal courts, prosecutors, public defenders, probation officers, and members of the public. Sent. Comm. Public Meeting Tr. from April 5, 2023, at 5–7.[5] The policy about which was Commission received the most commentary was the one under scrutiny here—the program statement addressing compassionate release. See discussion, id. at 9–17.

The motion to adopt the amended policy statement passed by a vote of four to three, id. at 81–82, along with the other proposed amendments to the guidelines and policy statements. The amendments were adopted by the Commission on April 5, 2023, and the Commission submitted them to Congress on April 27, 2023, along with a statement of reasons for the proposed amendments. Even though the Commission is not required to submit changes to policy statements to Congress, it submitted all the proposed amendments, including the policy statement regarding "unusually long sentences," as a package. Congress did not act to modify or disapprove the amendments and they became effective on November

---

[5] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

1, 2023. See 88 Fed. Reg. 28,254-01, 28,255, 28,258–28,259, 2023 WL 3199918 (F.R. May 3, 2023).

The government appears to concede that the Commission exercised its delegated authority in promulgating the revised policy statement but argues that the Commission's interpretation of the statute should be set aside because it is unreasonable. Resp., ECF No. 536 at 14. The government cites United States v. LaBonte, 520 U.S. 751, 753 (1997), where the Court commented that while the Commission is charged with establishing sentencing policies and practices for the federal criminal justice system, its discretion is not "unbounded." Although the Commission's discretion is broad, "it must bow to the specific directives of Congress." Id. at 757. In determining whether a guideline accurately reflects Congress' intent, the court looks at the statutory language, and if the guideline is at odds with the plain language of the statute, "it must give way." Id.

In LaBonte, Congress directed the Commission to assure that the guidelines specified a prison sentence "at or near the maximum term authorized for categories of" adult offenders who commit their third felony drug offense or violent crime. Id. at 752 (citing 28 U.S.C. § 994(h)). At issue was whether, "by 'maximum term authorized,' Congress meant (1) the maximum term available for the offense of conviction including any applicable statutory sentencing enhancements, as the United States argue[d], or (2) the maximum term available without such enhancements, as the Commission ha[d] determined." Id. at 752–53. The Court found that, applying the maxim that "Congress said what it meant" and giving the words their ordinary meaning, the word "maximum" most naturally connoted the "greatest quantity or value attainable in a given case." Id. at 757 (quoting Moskal v. United States, 498 U.S. 103, 108

(1990); Webster's New International Dictionary 1396 (2d ed. 1958); Black's Law Dictionary 979 (6th ed. 1990)). The Court concluded that the phrase, "maximum term authorized" should be construed as requiring the "highest" or "greatest" sentence allowed by statute. Id. at 758. "In sum, we hold that the phrase 'at or near the maximum term authorized' is unambiguous and requires a court to sentence a career offender 'at or near' the 'maximum' prison term available once all relevant statutory sentencing enhancements are taken into account." Id. at 762.

Applying the same maxim and giving the words their ordinary meaning, 28 U.S.C. § 994(t) charges the Commission with defining what constitutes "extraordinary and compelling reasons for sentence reductions." Congress stated that "the Commission … shall describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." Id. This language is broad and does not on its face preclude an "unusually long sentence" along with the other criteria found in USSG §§ 1B1.13(b)(6) and (c) from being considered "an extraordinary and compelling" reason for a sentence reduction. To the contrary, the language is unambiguous that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reductions … and a list of specific examples."

The government argues that "no reasonable interpretation" of "extraordinary and compelling," when considered in the context of the structure and purpose of 18 U.S.C. § 3582(c)(1)(A)(i), can encompass nonretroactive or intervening changes in case law and that the Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) therefore is invalid. Resp., ECF No. 536 at 15. However, prior to the promulgation of § 1B1.13(b)(6), several

13

courts found that just such changes in case law can be "extraordinary and compelling reasons" for a sentence reduction, and that has been the law in the Fourth Circuit since 2020. See McCoy, 981 F.3d at 286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Of course, McCoy has been superseded by § 1B1.13(b)(6), but to say that no reasonable interpretation of extraordinary and compelling can include nonretroactive or intervening changes in case law is belied by McCoy and other courts that reached similar conclusions. See United States v. Ruvalcaba, 26 F.4th 14, 28 (1st Cir. 2022) ("We hold that the district court's categorical exclusion of non-retroactive changes in sentencing law from the 'extraordinary and compelling' calculus is neither consistent with the relevant statutory text nor compelled by the arguments embraced by the district court."); United States v. Chen, 48 F.4th 1092, 1097–98 (9th Cir. 2022) (finding for purposes of § 3582(c)(1)(A), "[t]here is no textual basis for precluding district courts from considering non-retroactive changes in sentencing law when determining what is extraordinary and compelling."); United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (finding that nothing prohibits district courts from finding the existence of "extraordinary and compelling" circumstances based at least in part on the fact that the First Step Act lowered the mandatory minimum sentence to be imposed under 21 U.S.C. § 841(b)(1)(A)).

To be sure, other courts have reached the opposite conclusion. See, e.g., United States v. McCall, 56 F.4th 1048, 1055 (6th Cir. 2022) ("Consistent with the text of the compassionate-release provision, along with the principles, structure, and history of federal sentencing law, we hold that nonretroactive changes in sentencing law cannot be 'extraordinary and

compelling reasons' that warrant relief."); United States v. King, 40 F.4th 594, 595 (7th Cir. 2022) ("When deciding whether 'extraordinary and compelling reasons', 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions."); United States v. Crandall, 25 F.4th 582, 586 (8th Cir. 2022) (concluding that "a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)) and United States v. Andrews, 12 F.4th 255, 261 (3rd Cir. 2021) ("The nonretroactive changes to the § 924(c) mandatory minimums ... cannot be a basis for compassionate release.").

But the fact that courts disagreed on whether a non-retroactive change in law could be an extraordinary and compelling reason for a sentence reduction does not mean that the Commission exceeded its authority when it adopted the policy statement. Congress has charged the Commission with periodically reviewing and revising the guidelines. Braxton v. United States, 500 U.S. 344, 348 (1991) (citing 28 U.S.C. § 994(o)). "The Guidelines are of course implemented by the courts, so in charging the Commission "periodically [to] review and revise" the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." Id. "In other words, Congress anticipated that the Commission would use the amendment process to resolve disagreements among courts of appeals." United States v. Goines, 357 F.3d 469, 475 (4th Cir. 2004) (citing Douglas A. Berman, The Sentencing Commission as Guidelines Supreme Court: Responding to Circuit Conflicts, 7 Fed. Sentencing Rep. 142, 142 (1994)).

The government also argues that the Commission's interpretation of § 3582(c)(1)(A) is in tension with the principle of separation of powers because it purports to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis. Resp., ECF No. 536 at 24–25. The government points out that three members of the Commission voted against approving § 1B1.13(b)(6), expressing concern that the policy statement exceeded the Commission's authority and made a "seismic structural change" to the criminal justice system without congressional authorization or directive. Sent. Comm. Public Meeting Tr. from April 5, 2023, at 60. The dissenting commissioners were concerned that allowing nonretroactive changes in law to establish a basis for a sentence reduction "supplant[ed] Congress's legislative role," and created a "separation of powers" problem. Id. at 60–61.

This issue was addressed by the Third Circuit Court of Appeals in a similar context. The court noted the following when addressing retroactivity of guidelines amendments in USSG § 1B1.10:

> Although the Commission's policy statements are subject to neither the 180–day waiting period nor the APA's notice-and-comment requirements, its revision of § 1B1.10 did not violate the separation-of-powers doctrine. The purpose of those measures—to make the Commission accountable—was fulfilled. "Although policy statements are not subject to the 180–day waiting period applicable when the Commission passes a Guidelines Amendment, Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination 'at any time.'" [United States v. Horn, 679 F.3d 402, 405–06 (6th Cir. 2012) (quoting Mistretta v. United States, 488 U.S. 361, 394 (1989)) (internal citation omitted)]; see also United States v. Fox, 631 F.3d 1128, 1131 (9th Cir. 2011) ("Congress, of course, can override both Guidelines and Policy Statements by statute."). The Commission, then, remains fully accountable to Congress when it issues binding policy statements like § 1B1.10. Moreover, the Commission did solicit public views about § 1B1.10(b)'s limitation on sentence

16

reductions and made its decision to make the limitation more stringent at a public hearing. See 76 Fed.Reg. 24960 (May 3, 2011); U.S. Sentencing Comm'n, Public Meeting Minutes (June 30, 2011). "The public nature of the proceedings provided an effective check and allayed the concerns voiced by the Court in Mistretta." Horn, 679 F.3d at 406.

No legislative power imbalance of constitutional dimensions resulted from the Commission's decision to set a limit on sentence reductions pursuant to § 3582(c)(2). Congress validly delegated to the Commission authority to make that decision, drafted the statute that made it binding on courts, and retained the power to legislate over it. The legislative authority Defendants ascribe to the Commission was not unfettered or otherwise improper.

United States v. Berberena, 694 F.3d 514, 524–25 (3d Cir. 2012). The Eighth Circuit reached the same conclusion in United States v. Anderson, 686 F.3d 585, 589–591 (8th Cir. 2012), as did the Eleventh Circuit in United States v. Colon, 707 F.3d 1255, 1261 (11th Cir. 2013).

The same reasoning applies with regard to § 1B1.13(b)(6) and (c). Congress gave the Commission the authority to promulgate the policy statement at 28 U.S.C. § 994(t) and the Commission did so. Congress presumably reviewed § 1B1.13(b)(6) and (c) during the 180-day period the revised guidelines were under review and took no action. If Congress believed that the Commission's policy statement ran afoul of the doctrine of separation of powers, it could have taken action and indeed, can still take action, using its authority to override the policy statement. Fox, 631 F.3d at 1131. This court can discern no basis for taking action that Congress has the authority to take with regard to policy statement but thus far, has not.

The government also argues that § 1B1.13(b)(6) conflicts with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose. Resp., ECF No. 536 at 15–23. But the government's brief was filed before the Fourth Circuit issued its decision in Davis, which held

that a change in case law can constitute an extraordinary and compelling reason for compassionate release. The court first quoted McCoy, 981 F.3d at 287 (cleaned up) for its statement that "the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." Davis, 99 F.4th at 657. The court next quoted Concepcion v. United States, 597 U.S. 481, 487 (2022), which held that "[b]ecause district courts are always obligated to consider the nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." Davis, 99 F.4th at 657. The court concluded that Concepcion and the Commission's policy statement in § 1B1.13(b)(6) "serve to confirm and amplify" the court's earlier ruling in McCoy that "[n]on-retroactive changes in law remain relevant when a court has to decide when and how to modify a sentence," and a court abuses its discretion when it fails to do so. Id. at 658.

Although the Fourth Circuit did not parse the language of § 1B1.13(b)(6) in connection with 18 U.S.C. § 3582(c)(1)(A), the court found the policy statement to be consistent with the Supreme Court precedent set in Concepcion and its own precedent in McCoy. Given the court's unequivocal holding that non-retroactive changes in the law may warrant compassionate release, this court has no basis for finding that USSG § 1B1.13(b)(6) is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose.

Finally, the court notes that at least one other court in the Fourth Circuit has addressed this issue, albeit in a footnote. See United States v. Dire, No. 2:10cr56, 2024 WL 4259871, at *3 n.3 (E.D. Va. Sept. 20, 2024) (rejecting argument by government that the Commission

18

exceeded its authority when it authorized district courts to consider non-retroactive statutory amendments as a basis for compassionate release). See also United States v. Berry, Nos. 1:05-CR-118, 1:05-CR-119, 2024 WL 4466828 (M.D.N.C Oct. 10, 2024) (finding without discussion of whether the Commission exceeded its authority that a sentence reduction was consistent with § 1B1.13(b)(6) based on intervening changes to 18 U.S.C. § 924(c) and the sheer length of the defendant's sentence).

Other courts which have considered whether the Commission exceeded its authority are divided. Compare, e.g., United States v. Jean, 108 F.4th 275, 290 (5th Cir. 2024) (taking note of the deference given to the Commission by both Congress and the Supreme Court and finding that the Commission's resolution of the circuit split supports the conclusion that modification of a legally imposed sentence may be warranted by non-retroactive changes in the law); United States v. Daniel, No. 02-20676-CR-ALTONAGA, 2024 WL 3103311, at *3 (S.D. Fla. June 24, 2024) (rejecting government's argument that the Commission exceeded its authority when it promulgated § 1B1.13(b)(6)) and United States v. Ware, No. 1:97-CR-00009-SCJ, 2024 WL 1007427, at *7 (N.D. Ga. Mar. 6, 2024) (assessing same arguments the government makes here and concluding that "that the Sentencing Commission lawfully exercised its authority in defining extraordinary and compelling reasons for compassionate release in Section 1B1.13(b)(6)'s amendment for unusually long sentences.") with United States v. O'Neill, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102, at *22 (E.D. Wis. May 23, 2024) ("[T]he Court finds that § 1B1.13(b)(6) is manifestly contrary to the statutory scheme set forth in § 994(t) and § 3582(c)(1)(A), and that the Commission exceeded its statutory authority by adding the subsection.") and United States v. Carter, No. 07-374-1, 2024 WL

19

136777, at *6 (E.D. Pa. Jan. 12, 2024) (finding that Third Circuit's holding that an unusually and disproportionately long sentence is not an extraordinary and compelling sentence warranting a sentence reduction could not be overridden by the Commission because it did not have authority to amend the statute the court construed in a prior case).

Notwithstanding the division among the courts, this court is bound to follow Fourth Circuit precedent set out in <u>Davis</u>. Although the argument regarding whether the Commission exceeded its authority was not before the <u>Davis</u> court, the Fourth Circuit implicitly found that §§ 1B1.13(b)(6) and (c) resulted from an appropriate exercise of the Commission's authority when it applied the policy statement to find that a gross disparity between an original sentence and the sentence the defendant likely would receive today can be an extraordinary and compelling reason warranting compassionate release.

In sum, the court finds that §§ 1B1.13(b)(6) and (c) of the guidelines are consistent with 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t). The Commission did not exceed its authority when it amended the policy statement, and the court will apply the Commission's interpretation of what constitutes an extraordinary and compelling circumstance warranting a sentence reduction to Stewart's case.

## B. Career Offender Designation

Stewart argues that because his only count of conviction is a count of conspiracy, he cannot be considered a career offender under <u>United States v. Norman</u>, 935 F.3d 232 (4th Cir. 2019). In <u>Norman</u>, which was decided after Stewart was sentenced, the Fourth Circuit determined that convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The court reasoned that because the

"generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Id. at 236–38. Accordingly, if sentenced today, Stewart's conspiracy offense would not be considered a controlled substance offense and therefore would not satisfy the requirements of USSG § 4B1.1(2).

The government appears to agree that if Stewart were sentenced today, he would not be considered a career offender and his guidelines range would be 151 to 188 months, rather than the 262 to 327 months he faced when he was sentenced in 2014. Resp., ECF No. 530 at 23. However, the government asserts that the change to the guidelines sentence is not an extraordinary and compelling reason for a sentence reduction because the difference is not as great as those contemplated in McCoy.[6] Id. at 23–24.

At sentencing, the government recommended a sentence of 210 to 244 months in recognition of the changes that were to take effect because of Amendment 782 to the guidelines, which reduced guidelines ranges for drug offenses. Gov't Sent. Mem., ECF No. 296 at 4–6. Stewart sought a sentence of 100 to 125 months, arguing that application of the career offender guideline substantially overrepresented that seriousness of his criminal history. Def.'s Sent Mem., ECF No. 302 at 5–7. The court sentenced Stewart to a term of 180 months, which represented approximately 69 percent of the low end of the guidelines after accounting for the proposed guidelines amendment.

---

[6] In McCoy, one petitioner originally was sentenced to just over 35 years and his sentence was reduced to time served, or approximately 17 years. The three other petitioners were sentenced to 45 years and their sentences were reduced to time served, or approximately 25 years. McCoy, 981 F.3d at 277–79.

Today, without the career offender designation, Stewart's offense level would be 30 based on 637.7 grams of crack cocaine, USSG § 2D1.1(c)(4), reduced by 3 levels for acceptance of responsibility to 27. With a criminal history category of VI based on 13 criminal history points, his guidelines would be 130 to 162 months. A further reduction is not necessary to make this sentence commensurate with the sentence imposed in 2014, because a sentence of 130 months reflects the lack of the career offender designation as well as the November 2014 changes to the drug weight guidelines. Thus, if Stewart were sentenced for the same offense today as he was in 2014, he likely would be sentenced to a term of 130 months, and the difference between the sentence Stewart received in 2014 and the 130-month sentence he likely would receive today is 50 months.

The fact that the difference in the two sentences is 50 months, and not the larger differences cited in McCoy, does not undermine Stewart's argument that the difference is a "gross disparity" warranting compassionate release. This court found in United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266 (W.D. Va. July 15, 2021), that a sentencing disparity of 22 months was a gross disparity and thus an extraordinary and compelling reason to grant a sentence reduction. Other courts have found similar differences in sentences to qualify as "extraordinary and compelling reasons" to reduce a sentence. See United States v. Miller, No. 2:08-cr-01155-DCN-8, 2023 WL 7065545, at *4 (D.S.C. Oct. 26, 2023) (granting compassionate release when if sentenced today, defendant's sentence would likely be 30 months shorter than original sentence); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (finding sentence more than three years longer than it would have been were defendant convicted today to be an extraordinary and compelling reason for

22

compassionate release); and <u>United States v. Brown</u>, No. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021) (finding 74-month difference in sentence defendant would have received if sentenced today to be a "gross disparity" and thus an extraordinary and compelling reason to warrant a sentence reduction).

The court finds that the 50-month disparity between Stewart's current sentence and the sentence he would likely be given for the same conduct today, is a "gross disparity" that constitutes an "extraordinary and compelling" reason warranting a sentence reduction under § 3582(c)(1)(A).[7]

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." <u>United States v. High</u>, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

---

[7] In his <u>pro se</u> motion, Stewart asserted that his prior convictions for armed robbery would no longer be considered predicate offenses for the career offender guideline and the Supreme Court decision in <u>Johnson v. United States</u>, 576 U.S. 591 (2015). However, because the court finds that he is entitled to a sentence reduction because a career offender designation cannot be based on a conviction for "conspiracy" to commit an offense after <u>Norman</u>, it does not address this argument. For the same reason, the court does not address Stewart's arguments regarding the COVID-19 pandemic, his chronic health issues, or staffing problems in the Bureau of Prisons.

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Stewart participated in a conspiracy for approximately 18 months that trafficked crack cocaine in and around Winchester, Virginia. Stewart was described as a mid-level distributor who sold crack cocaine

in both distribution and personal use quantities. PSR, ECF No. 321 ¶¶ 13–20. Stewart was found responsible for distributing 637.7 grams of cocaine base. Id. ¶ 20. Stewart's participation in this conspiracy weighs against a sentence reduction.

Turning to the history and characteristics of the defendant, Stewart's criminal history includes his participation as the getaway driver in two violent armed robberies when he was 18 years old, one conviction for aggravated assault when he was 19, and a conviction for battery when he was 30. Id. ¶¶ 36–38, 40. His other convictions were for non-violent offenses. Stewart described himself as an alcoholic at his presentence interview, saying he began drinking after his sister's death in 1997 and drank daily except during periods when he was incarcerated. Id. ¶ 54. Stewart dropped out of school in the eleventh grade but obtained his GED while incarcerated. Id. ¶ 55.

Stewart's institutional record is generally positive. He had one sanctioned disciplinary incident in 2021 for possessing an unauthorized item, but his disciplinary history is otherwise clear. Supp. Mot., ECF No. 524-1 at 6. He is classified as a medium security risk and is considered a medium risk for recidivism. Id. at 8. He has taken several fitness classes and has worked as a unit orderly and as a cook. Id. at 3, 5. Looking at Stewart's history and characteristics as a whole, while Stewart engaged in some violent behavior as a young man, his conviction did not involve firearms and there is no indication that he has engaged in violent behavior since being incarcerated. Nevertheless, his classification as a medium security risk and as being at medium risk for recidivism raises some concerns. Overall, Stewart's history and characteristics are neutral with regard to a sentence reduction.

25

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that a sentence of 130 months is sufficient to meet these goals. Such a sentence is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Stewart with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Stewart would face a statutory mandatory minimum sentence of 120 months for his offense if he were sentenced today, and his guidelines range would be 130 to 162 months. PSR, ECF No. 321 ¶¶ 25–34; USSG § 2D1.1(5); USSG Ch. 5 Pt. A. This factor weighs in favor of reducing Stewart's sentence to 130 months but not less than time served. Regarding consideration of pertinent policy statements, as set forth above, the court finds that reducing Stewart's sentence to 130 months is consistent with USSG §§ 1B1.13(b)(6) and (c).

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Stewart received the second highest sentence in the conspiracy, although the longest sentence assessed against one of the co-conspirators has since been reduced from 204 months to 139 months. That leaves Stewart with the third longest sentence, with the remaining sentences being one sentence of 132 months, three sentences of 120 months, one sentence of 96 months, and one sentence of 24 months. As discussed above, Stewart's 180-month

sentence was driven by the career offender enhancement, which would not apply today. Sentencing Stewart to 130 months or time served will not create a sentencing disparity between him and his co-defendants as it reflects his role as a mid-level distributor.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Stewart's case. Given the circumstances of this case, including Stewart's history and characteristics, the changes to the career offender guideline brought about by Norman, and the relevant guidelines, the court concludes that a sentence of 130 months, but not less than time served, is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Stewart's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III. Conclusion

For the above-stated reasons, the court will **GRANT** Stewart's motion for compassionate release, ECF Nos. 517, 524, and reduce his sentence to 130 months, but not less than time served, to be followed by a 5-year term of supervised release. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: November 21, 2024

Michael F. Urbanski
Senior United States District Judge